Jennifer L. Gates, OSB No. 050578
jgates@pearllegalgroup.com
Heather C. Doherty, OSB No. 244304
htourgee@pearllegalgroup.com
Pearl Legal Group PC
529 SW Third Avenue, Suite 600
Portland, OR 97204
Telephone: (503) 445-7101
**Counsel for Intervenor-Plaintiff City of Stayton**

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| MARION COUNTY, a Political Subdivision of the State of Oregon,<br>Plaintiff,<br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS, an agency of the United States government,<br>Defendant. | Case No. 6:26-cv-00956-MTK<br><br>**COMPLAINT**<br><br>Violations of the Administrative Procedure Act, 5 U.S.C. §§ 701-706 |

## I. INTRODUCTION

1. Through this action, the City of Stayton challenges the United States Army Corps of Engineers'("Corps") and its officers' (collectively, "Defendant") planned deep drawdown of Detroit Reservoir, in violation of its mandate to adequately analyze the impacts that such action will have on the North Santiam River, and in turn, on the City of Stayton's water treatment facilities and its ability to provide water for all users and uses that depend on it.

2. The Corps owns and operates the Willamette Valley System ("WVS"). In 2021, following years of reticence by the Corps to take action to protect Endangered Species Act-listed salmonids in the WVS, the Corps was ordered by this Court in *Northwest Environmental Defense Center, et al. v. United States Army Corps of Engineers, et al.*, No. 3:18-cv-00437-HZ (D. Or.

filed Mar. 13, 2018), ECF No. 220 (hereinafter, "*NEDC*"), to implement certain System-wide operational measures, including at Detroit, in order to facilitate passage for the listed species of salmon and steelhead.

3. In order to comply with the court's order, Defendant developed a Draft Supplemental Environmental Impact Statement ("Draft SEIS"), which it published in November 2025. That Draft EIS contemplated deep drawdowns at Detroit Reservoir beginning as soon as late 2026.

4. In 2024, the Thomas R. Carper Water Resources Development Act of 2024, Pub. L. No.118-272 ("WRDA") required Defendant to complete a turbidity study by January 4, 2026. Defendant did not do so and have not completed a turbidity study to date.

5. Deep drawdowns of Detroit Reservoir will release an influx of suspended sediments into the North Santiam River. These sediments will travel downstream, significantly increasing the turbidity of the river and threatening the public water supplies downstream of Detroit.

6. The City of Stayton is solely responsible for providing drinking water to its roughly 8,000 residents as well as to the City's healthcare facilities, including Santiam Hospital, public safety entities such as the Stayton Fire District, and other critical public facilities, including the North Santiam School District. The City of Sublimity also relies on the City of Stayton for disposal of its wastewater in the City of Stayton's wastewater treatment facilities.

7. Increased turbidity in the North Santiam River as a result of a deep drawdown will irreparably harm the City of Stayton's water treatment infrastructure because it will disable its direct online slow sand filters ("SSF"). Direct online SSF systems are not designed for high-turbidity water sources; even very fine sediments have disabling impacts on the filter, and these



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

impacts are cumulative, leading to the filters becoming completely clogged and useless when faced with an increase in fine sediment-dominated turbidity. The level of turbidity anticipated to result from a deep drawdown at Detroit would quickly disable the City of Stayton's SSF system and bring its municipal water delivery operations to a halt.

8. The City of Stayton provided comments on the Draft SEIS within the comment period highlighting this dire reality. It explained that, as drafted, the Draft SEIS failed to adequately consider the impacts the deep drawdown will have on downstream municipal water purveyors.

9. The City of Stayton's comments discussed in detail its concerns with the Draft SEIS's discussion of turbidity and suggested specific revisions to address downstream communities' concerns with respect to deep drawdowns at Detroit.

10. In its May 2026 WVS Operation and Maintenance Final Supplemental Environmental Impact Statement ("Final SEIS"), the Corps memorialized its final decision to conduct deep drawdowns at Detroit without considering key downstream impacts, including the impact of increased turbidity on the City of Stayton's water treatment system.

11. The Final SEIS generally acknowledges that there may be adverse consequences of a deep drawdown at Detroit. However, it fails to consider with any particularity the specific impacts that downstream communities could expect with respect to a deep drawdown. In doing so, it fails to consider public comments.

12. The Final SEIS contemplates deep drawdowns that will disable millions of dollars in city-owned infrastructure.

13. The Final SEIS contemplates deep drawdowns that will bring a halt to municipal water services in the City of Stayton.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

14. The Final SEIS suggests the Corps "would" develop an Emergency Response and Communications Plan and "coordinate with North Santiam communities" on a Plan that can "inform" whether to modify, pause or cease the drawdown. As of the time of filing, the Corps has not provided a draft or final Emergency Response and Communication Plan to the City of Stayton nor communicated with it about a Plan.

15. The City has no guarantee that the conditions of a such a Plan would resolve the risks to its water treatment system or could and would be implemented in a timely manner to avoid damage to, or reduced capacity or shutdown of, the water treatment system. The absence of a Plan or an inadequate or uncertain Plan leaves the City of Stayton at the mercy of other governmental agencies that may or may not act quickly enough to address concerns and avoid a complete shutdown of water treatment.

16. The Final SEIS fails to complete a turbidity report, in violation of the WRDA.

17. The Final SEIS fails to take a hard look at the proposed action, as required by the National Environmental Policy Act, 16 U.S.C. § 4321-4370h ("NEPA").

18. The Final SEIS contemplates yearly deep drawdowns of Detroit Reservoir that will adversely impact downstream water quality, leading to a violation of Oregon's water quality standards, in violation of the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA").

19. The Final SEIS fails to account for the impacts of yearly deep drawdowns on ESA-listed salmonids, as well as ESA-listed Gray Wolves.

20. In their failure to fully analyze turbidity impacts, thoroughly consider and respond to public comments, failure to commit to an effective emergency plan, failure to evaluate reasonable alternatives, violation of Oregon water quality standards for turbidity, and failure to



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

protect ESA-listed species, Defendant has violated the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA").

21. The City of Stayton, through this action, seeks injunctive and declaratory relief based on these violations of federal law. It seeks to set aside the Final SEIS and enjoin the deep drawdowns of Detroit Reservoir until the Corps has complied with federal law and ensure that its actions will not irreparably harm the City of Stayton.

## II. JURISDICTION AND VENUE

22. This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331 because these claims arise under the laws of the United States, specifically, the APA, 5 U.S.C. §§ 701-706, NEPA, 42 U.S.C. §§ 4321–4370h, the Clean Water Act, 42 U.S.C. § 1251 *et seq.*, the Endangered Species Act, 16 U.S.C. § 1531 *et seq.*, and the WRDA.

23. Venue is proper in the District of Oregon, Eugene Division pursuant to 28 U.S.C. § 1391(b)(2) because the impacts of the events or omissions giving rise to these claims will arise in this district because Detroit Dam and Reservoir, as well as the City of Stayton, are located in this district.

## III. PARTIES

24. Plaintiff City of Stayton is an Oregon municipal corporation located in Marion County in the State of Oregon.

25. Defendant United States Army Corps of Engineers is an agency or instrumentality of the United States. It owns, operates, and maintains the Willamette Valley System.

26. Defendant United States Army Corps of Engineers is responsible for consultation concerning the Willamette Valley System for purposes of Section 7 of the ESA, 16 U.S.C. § 1536.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

27. Defendant United States Army Corps of Engineers is a "person" for purposes of the ESA, as that term is defined in 16 U.S.C. § 1532(13).

28. Defendant United States Army Corps of Engineers is an "agency" for purposes of the APA, as that term is defined in 5 U.S.C. § 551(1).

29. Defendant United States Army Corps of Engineers has waived its sovereign immunity for actions for injunctive and declaratory relief arising under the APA. 5 U.S.C. § 706.

## IV. FACTUAL ALLEGATIONS

### A. The Thomas R. Carper Water Resources Development Act of 2024

30. Congress enacted the Thomas R. Carpenter Water Resources Development Act of 2024, Pub. L. 118-272 (hereinafter, the "WRDA") on January 4, 2025.

31. The WRDA required Defendant, within one year of enactment (January 4, 2026), to submit to Congress "a report on the instances of high turbidity in a reservoir in the Willamette Valley resulting from a drawdown of the reservoir." WRDA § 1205(b)(1).

32. In enacting the WRDA, Congress specifically directed Defendant to:

> (B) identify and report instances during the 10-year period preceding the date of enactment of this Act in which turbidity concerns have arisen following a drawdown at a reservoir in the Willamette Valley…;
>
> (C) report on turbidity monitoring…during drawdowns to identify, and if necessary, correct, turbidity issues;
>
> (D) provide a summary of turbidity monitoring records collected during drawdowns with respect to which turbidity concerns have been raised by the public, including a comparison between turbidity prior to a drawdown, during a drawdown, and following refilling;



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

(E) identify lessons learned associated with turbidity resulting from drawdowns and indicate how changes based on those lessons learned are being implemented; and

(F) identify opportunities to minimize monetary strains on non-Federal entities caused by increased turbidity levels.

WRDA at § 1205(b)(2).

33. In enacting the WRDA, Congress recognized that turbidity is a known concern with respect to deep drawdowns in the WVS.

34. Deep drawdowns in the WVS have historically caused massive spikes in turbidity downstream from dams where they occur.

35. Defendant has previously carried out deep drawdowns at Green Peter Reservoir. Those drawdowns created significant turbidity plumes that flowed downstream.

36. Defendant failed to comply with the WRDA because it failed to complete and submit the report as required by § 1205(b) before the January 4, 2026 deadline.

**B. The National Environmental Policy Act**

37. Defendant United States Army Corps of Engineers is a "lead agency," as that term is defined in NEPA,42 U.S.C. § 4336e(9).

38. The Operation and Maintenance of the Willamette Valley System is a "major agency action," as that term is defined in NEPA, 42 U.S.C. § 4336e(10)(A).

39. Lead agencies are required by NEPA to consider the effects of major agency actions that "significantly affect" the quality of the human environment. 42 U.S.C. § 4332(C). This must include a "detailed statement" on "reasonably foreseeable environmental effects" of the proposed action, "any reasonably foreseeable adverse environmental effects which cannot be



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

avoided should the proposal be implemented," and "a reasonable range of alternatives to the proposed agency action, including an analysis of any negative environmental impacts of not implementing the proposed agency action in the case of a no action alternative, that are technically and economically feasible, and meet the purpose and need of the proposal." *Id.* § 4332(C)(i)-(iii).

40. These requirements have been interpreted to mean that agencies must take a "hard look" at the environmental consequences of their actions. *WildEarth Guardians v. United States Dep't Agric. Animal & Plant Health Inspection Serv. Wildlife Serv.*, 135 F.4th 717, 728 (9th Cir. 2025). A "hard look" under NEPA requires "a reasonably thorough discussion of the significant aspects of the probable environmental consequences" of its action, *350 Montana v. Haaland*, 50 F.4th 1254, 1265 (9th Cir. 2022), and a full assessment of the cumulative impacts of the proposed action, *Center for Biological Diversity v. Salazar*, 695 F.3d 893, 917 (9th Cir. 2012).

41. Defendant has failed to include in the Final SEIS a detailed statement on the reasonably foreseeable environmental effects of their proposed deep drawdown of Detroit Reservoir. The Final SEIS is devoid of any detailed discussion of the impacts the deep drawdown will have on turbidity and water supply in the North Santiam River.

42. In failing to adequately analyze the impacts of turbidity on municipal water suppliers and the attendant lapse in water service, Defendant has failed to include in the Final SEIS a reasonably thorough discussion of a significant aspect of a probable consequence of their action.

43. In failing to adequately analyze the impacts of turbidity on municipal water suppliers and the attendant lapse in water service, Defendant has failed to include in the Final



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

SEIS, Defendant has failed to include a full assessment of the cumulative impacts of the proposed action.

44. Defendant has failed to include in the Final SEIS a detailed statement on the reasonably foreseeable adverse environmental effects which cannot be avoided should the proposal be implemented. The Final SEIS does not discuss the specific deleterious impacts of the deep drawdowns on downstream municipal water purveyors and users.

45. Defendant has failed to include in the Final SEIS a detailed statement on a reasonable range of alternatives to the proposed agency action. The Final SEIS does not discuss feasible alternatives or mitigation measures that would ameliorate the known dangers to municipal water purveyors and users.

46. The Final SEIS fails to consider how the deep drawdowns of Detroit Reservoir will harm ESA-listed salmonid species due to increased turbidity downstream of Detroit Reservoir leading to gill irrigation and clogging, decreased visibility leading to less effective predation, and decreased disease resistance, constituting a "take" under the ESA.

47. The Final SEIS fails to consider how the deep drawdowns of Detroit Reservoir will harm ESA-listed salmonid species due to mechanic injury of fish that pass through the dam at high rates of velocity and under high pressure, constituting a "take" under the ESA.

48. The Final SEIS fails to consider how the deep drawdowns of Detroit Reservoir will harm the ESA-listed gray wolf due to die-offs of ESA-listed and non-listed fish species that are a critical food source for gray wolves in the area, constituting a "take" under the ESA.

49. Defendant thus fails to adequately consider impacts to ESA-listed salmonids and gray wolves, in violation of NEPA's "hard look" requirement.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

50. Defendant's failure to provide a detailed statement on the reasonably foreseeable environmental effects, any reasonably foreseeable adverse environmental impacts which cannot be avoided, and a reasonable range of alternatives, amount to a violation of NEPA.

**C. The Clean Water Act**

51. The CWA provides that all department, agencies, or instrumentalities of the federal government are subject to the Act's provision "in the same manner, and to the same extent as any nongovernmental entity…." 33 U.S.C. § 1323(a).

52. One core aspect of the CWA are water quality standards, governed by 33 U.S.C. § 1313. That provision allows states to promulgate water quality standards for various criteria. The State of Oregon has adopted water quality standards for turbidity. Or. Admin. R. ("OAR") 340-041-0036.

53. Oregon's water quality standard for turbidity provides that "no more than ten percent increase in natural stream turbidities may be allowed, as measured relative to a control point immediately upstream of the turbidity causing activity," as measured in Nephelometric Turbidity Units ("NTU"). *Id.*

54. Oregon's statewide narrative criteria also require that "deleterious factors," including turbidity, be maintained "at the lowest possible levels." OAR 340-041-0007(1).

55. Oregon's antidegradation policy provides that any further degradation of waters be avoided and that existing beneficial uses, such as drinking water, be protected. OAR 340-041-0004(1).

56. Deep drawdowns of Detroit Reservoir will lead to a greater than ten percent increase in turbidity in the North Santiam River relative to a control point immediately upstream of Detroit Reservoir, in violation of Oregon's numerical water quality standards.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

57. Deep drawdowns of Detroit Reservoir will violate Oregon's statewide narrative water quality standards because they will not keep turbidity to the lowest possible level.

58. Deep drawdowns of Detroit Reservoir will violate Oregon's antidegradation policy because they will degrade waters to an extent that threatens beneficial uses of the North Santiam River. The turbidity increase will make the water unsafe for the tens of thousands residents who rely on water drawn from the North Santiam River.

59. The Final SEIS fails to consider that a deep drawdown at Detroit Reservoir will lead to a violation of Oregon's water quality standards.

**D. The Endangered Species Act**

60. Section 9 of the ESA prohibits any person from "taking" any endangered species of fish or wildlife. 16 U.S.C. § 1538(1)(B).

61. To "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). "Take" may also include depriving species of a critical food source.

62. The deep drawdowns of Detroit Reservoir will result in a taking of ESA-listed salmonids and ESA-listed gray wolves.

63. The deep drawdowns of Detroit Reservoir will harm ESA-listed salmonid species because increased turbidity downstream of Detroit Reservoir will lead to gill irrigation and clogging, decreased visibility leading to less effective predation, and decreased disease resistance.

64. The deep drawdowns of Detroit Reservoir will harm ESA-listed salmonid species because the deep drawdowns will mechanically injure fish that pass through the dam at high rates of velocity and under high pressure.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

65. The deep drawdowns of Detroit Reservoir will harm the ESA-listed gray wolf because they will result in die-offs of ESA-listed and non-listed fish species that are a critical food source for gray wolves in the area.

66. City of Stayton residents catch ESA-listed salmonid species for sustenance and recreation from the North Santiam river, and City of Stayton residents operate businesses that cater to local and tourist fishers on the river. Injury to, death of or reduced lifespan or reproductive capacity of ESA-listed salmonid species harm these interests.

### E. The Administrative Procedure Act

67. The APA allows a court to compel agency action that has been "unlawfully held or unreasonably delayed." 5 U.S.C. § 706(1).

68. The APA allows a court to "hold unlawful and set aside" agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

69. The Final SEIS is a "final agency action," as that term is defined in the APA, 5 U.S.C. § 704, 5 U.S.C. § 701(b)(2), and 5 U.S.C. § 551(13).

70. Defendant's failure to develop an emergency response plan and communicate with the City of Stayton to develop one is a "final agency action," as that term is defined in the APA, 5 U.S.C. § 704, 5 U.S.C. § 701(b)(2), and 5 U.S.C. § 551(13).

### F. The North Santiam River and the Detroit Dam

71. The North Santiam River is located in with Willamette Valley, Oregon. It is a tributary of the Santiam River, which is in turn a tributary of the Willamette River. The North Santiam River provides water to at least ten cities in its vicinity, including to the City of Stayton.

72. The North Santiam River's water is well-suited for municipal use, as it is relatively clean and, in normal conditions, has very low turbidity.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

73. The North Santiam River is home to ESA-listed salmonids, specifically Upper Willamette River Chinook salmon (*Oncorhynchus tsawytscha*) and Upper Willamette River winter steelhead (*Oncorhynchus mykiss*).

74. The Detroit Dam dams the North Santiam River, creating Detroit Reservoir, upstream of the City of Stayton.

75. The area around Detroit Reservoir is part of the known range for ESA-listed gray wolves (*Canis lupus*).

76. Detroit Reservoir also provides habitat for kokanee salmon (*Oncorhynchus nerka*), a non-listed salmonid. Gray wolves feed on both the listed and non-listed fish species.

77. Defendant owns and operates Detroit Dam alongside the twelve other dams that make up the WVS.

78. After years of failing to comply with its obligations under the Endangered Species Act with respect to protected salmonids, in 2021 Defendant was ordered to implement measures to allow for safe salmonid passage through the dams. *See NEDC*, ECF No. 220.

79. One required measure in the 2021 order required the implementation of deep drawdowns at Detroit Dam.

80. Defendant undertook the SEIS process in an attempt to comply with the terms of the 2021 order.

81. However, in that process, Defendant failed to adequately consider how the deep drawdowns at Detroit would impact the operations of municipal water purveyors, who rely on the low-turbidity water of the North Santiam River for their water supplies. Defendant further failed to consider how the planned drawdowns would impact ESA-listed species.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

82. Deep drawdowns involve the opening of the lowest gates in the dam structure, known as regulating outlets. When the regulating outlets are opened, water rushes out, and with it, any sediment that has built up behind the gates. This causes massive flushes of sediment to be released into the system and travel downstream, drastically and nearly instantaneously causing the turbidity of the water to spike.

83. Deep drawdowns also risk lethal injury to fish present in the reservoir at the time of the drawdown, due to barotrauma (injury cause by rapid depressurization when fish go from deep water inside the reservoir to surface-level beyond the regulator outlets) or due to the sheer force created by the flush of water and sediment leaving the reservoir.

84. Past deep drawdowns in the WVS have seen mass die-offs of kokanee salmon downstream of dams.

**G. The 2021 Interim Injunction**

85. In 2018, Northwest Environmental Defense Center, Native Fish Society, and WildEarth Guardians, (the former two of which are Intervenor-Defendants in this action) filed suit in this Court against the Corps and the National Marine Fisheries Service for violations of the ESA and APA with respect to the Willamette Valley System and impacts to ESA-listed salmonids. *Nw. Env't Def. Ctr. et al. v. U.S. Army Corps of Engineers et al.*, No. 3:18-cv-00437-HZ (D. Or. filed Mar. 13, 2018) (hereinafter, "*NEDC*"). The City of Stayton was not a party to that action.

86. In 2021, the Court ordered the Defendant in that case to comply with the Interim Measure Implementation Plan for Detroit and Big Cliff Dams. *NEDC*, ECF No. 220. The Corps must "carry out fish passage and water quality operations at Detroit and Big Cliff reservoirs." ECF No. 212 at 3.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

87. Neither the Interim Injunction nor the Interim Measure Implementation Plan required the Corps to study the impacts of deep drawdowns at Detroit on downstream municipal water supplies.

88. Plaintiffs City of Salem and Marion County intervened in the *NEDC* action and raised points related to turbidity concerns with respect to public water supplies in response to Plaintiffs' motion for preliminary injunction. *NEDC*, ECF No. 60 at 6-7. However, there is no evidence that the expert panel appointed in that case specifically considered turbidity impacts on downstream municipal water suppliers in issuing its recommendations, and no party requested that be incorporated into the expert panel's work. The City of Stayton was not a party.

**H. The City of Stayton and Its SSF Water Treatment Systems**

89. The North Santiam River is the sole water source for the City of Stayton. The City of Stayton draws water from the North Santiam River to provide water to its private residents, its businesses, and critical public infrastructure, including public safety facilities, healthcare facilities and schools.

90. The North Santiam River has historically been a clean and consistent water source for the City of Stayton, its residents, businesses, hospital and other users.

91. The City of Stayton uses a direct online slow sand filtration ("SSF") system, which is materially different from other filtration systems used by other municipalities in the WVS, and even from others along the North Santiam.

92. The City of Stayton's direct online SSF systems receives source water directly from the river (i.e., there is no pretreatment necessary).



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

93. Direct online SSFs are ideal for water sources that exhibit low turbidity. The primary filtration component of an SSF is the "schmutzdecke," the biologically active layer that effectively removes pathogens and low concentrations of suspended particulate matter.

94. Even brief exposure to turbid water (greater than 10 NTU) or water with greater fine sediment content risks compromising the SSF. This is because very fine sediments have been shown to penetrate and compact the sand, are poorly removed by simple sedimentation or hydraulic buffering upstream, can damage the schmutzdecke, and are slow to clear, even after turbidity declines. These issues lead to clogging, increased headloss, reduced capacity, and shortened filter tun times.

95. Frequent cleaning of a SSF following a high-turbidity event has cumulative negative consequences. Repeatedly cleaning the SSF under turbid conditions drastically reduces the lifespan of a filter.

96. Stayton's SSF can be fully debilitated by exposure to water with turbidity of greater than 10 NTU. The timeframe for this effect varies based on the sediment particle size, which is unknown, unpredictable given variation in sediments behind the dam, and can cause clogging of the filters in a short time.

97. Past drawdowns in the WVS have caused turbidity levels up to approximately 450 NTU.

98. Once the SSF is debilitated, the entire municipal water system will cease to operate. Water service cannot resume without extended outages to allow for repairs, reconstruction, or replacement.

99. Replacing slow sand filter media requires the filter to be offline for weeks in order for the filter to ripen (i.e. for the schmutzdecke to mature).



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

100. The mechanism identified by the Corps for the City of Stayton to request a cessation of the drawdown should it start to see adverse impacts on its water treatment system following the start of a deep drawdown, an “Emergency Response Communications Plan” has not been published or provided in draft or final, is undefined, uncertain and that not guaranteed to prevent damage to the City’s water treatment system..

101. The Corps has not discussed an Emergency Response Communications Plan with the City of Stayton nor provided one to the City of Stayton.

### 1. Harms to the City of Stayton from a Deep Drawdown of Detroit Reservoir

102. The City of Stayton’s infrastructure will be irreparably harmed by the deep drawdowns at Detroit as currently contemplated in the Final SEIS.

103. The harms to the City of Stayton are not speculative. Lessons learned from the recent drawdowns on the South Santiam River, as well as acknowledgements in the Final SEIS, make it certain that the proposed deep drawdowns at Detroit will cause increased turbidity for extended periods of time.

104. The turbidity caused by the deep drawdown will harm the City of Stayton because it will damage City-owned infrastructure and it will impede the City’s duty to deliver potable water to its residents, critical municipal infrastructure such as its wastewater treatment plant, businesses, the hospital, schools, and fire services.

### 2. Harms to City-Owned Infrastructure

105. Exposure to water with elevated turbidity will disable the City of Stayton’s SSF system. This will cause the entire system to go offline until the filter can be cleaned or replaced.

106. Frequent cleaning of the SSF will cause the filter to become inoperable. Once it reaches that point, it cannot be cleaned or repaired.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

107. Replacing the SSFs every time they become destroyed will be extremely expensive. Equally if not more burdensome will be installing a pretreatment system, seeking and implementing an alternative filtration system, or locating an alternative water supply.

**I. Harms to Those Who Rely on City-Provided Water**

108. When the deep drawdown of Detroit Reservoir occurs, the associated turbidity spike likely will disable the SSF system which would cause the entire municipal water system to cease.

109. Residential water customers will no longer receive service. They will be forced to seek out alternative, more expensive water sources, such as bottled water, for all purposes, from laundry and bathing to cooking and drinking.

110. The City of Stayton is home to multiple healthcare facilities, including Santiam Hospital. If the municipal water system is forced to shut down, those healthcare facilities will likewise shut down due to a lack of water and due to an inability to comply with fire codes. This will leave the City of Stayton and its surrounding communities without access to local healthcare facilities. This will force residents to travel farther to receive medical care, including emergency medical care, putting them at risk.

111. The North Santiam School District operates Stayton Elementary School, Stayton Intermediate Middle Schools, and Stayton High School. If the municipal water system is forced to shut down, the schools that rely on the City of Stayton for their water supplies will likewise be forced to close.

112. The City of Stayton provides water to the Stayton Fire District, the only fire department serving the City as well as the nearby unincorporated communities of Marion,



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

Mehama, and Elkhorn. If the municipal water system is forced to shut down, the Fire District and these communities will either lack fire protection or will require an alternate water source.

113. Businesses in Stayton will also be forced to close or shift to online services only if the municipal water system shuts down. This will include restaurants, shops, offices, and other businesses that rely on City-provided water, many of whom cannot operate at all without water. The closure—or curtailment of operations—of these businesses will have severe economic impacts on the community and will imperil jobs.

114. The City of Sublimity disposes of its wastewater through the City of Stayton's wastewater treatment facility. When the City of Stayton's municipal water treatment system shuts down, that will include the wastewater treatment facility. This will leave the City of Sublimity with nowhere to dispose of its wastewater.

**K. The City of Stayton's Comments on the Draft SEIS**

115. In light of the deep drawdowns as contemplated in the Draft SEIS and the impacts they would have on the City of Stayton, the City submitted detailed written comments to the Corps within the public comment period.

116. The City of Stayton provided comments to Defendant outlining specific changes to the SEIS that would allow for deeper analysis of the impacts of deep drawdowns at Detroit, with particular respect to communities that draw their drinking water from the North Santiam River through the use of SSF systems.

117. The City of Stayton specifically requested that, should the Corps determine that compensatory mitigation is warranted, the deep drawdowns at Detroit be delayed until at least 2028, given the significant time and capital expenditure associated with those mitigation mechanisms.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

118. The City of Stayton, in its comments, reminded the Corps of its obligations to complete a turbidity report under the WRDA, and requested that it refrain from issuing a final SEIS until the impacts of turbidity are better understood.

### L. The Final SEIS

119. The Final SEIS was published in May 2026. The Final SEIS contemplates deep drawdowns of the Detroit reservoir as soon as November 2026, giving downstream cities less than six months to prepare their water treatment facilities.

120. The Final SEIS notes that the deep drawdown will mobilize a flush of sediment, drastically and rapidly increasing turbidity in the North Santiam River.

121. The Final SEIS fails to include the turbidity report as required by the WRDA.

122. The Final SEIS makes general acknowledgment of increased turbidity downstream from deep drawdowns. However, it fails to specifically and adequately explain how deep drawdowns of the Detroit Reservoir will impact downstream municipal water suppliers, much less those that use direct online SSF systems, or even SSF systems in general.

123. The Final SEIS does not identify or assess the specific risks associated with the destruction of municipal infrastructure, including the complete cessation of potable water delivery by the City of Stayton.

124. The Final SEIS does not perform a cumulative and recurring impacts analysis with respect to municipal water supplies.

125. The Final SEIS does not provide details on an Emergency Response and Communication Plan, let alone articulate how stakeholders like the City of Stayton could invoke such a plan to halt the deep drawdown should turbidity threaten the City's water supply.

126. The Final SEIS does not contemplate in-pool or upstream turbidity monitoring.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

127. The Final SEIS does not identify an adaptive management plan to avoid and minimize impacts to municipal infrastructure and typical water uses.

128. The Final SEIS does not identify channels for ongoing direct communication between Defendant and the City of Stayton during deep drawdowns, criteria for stopping a drawdown to prevent damage to Stayton's drinking water treatment or what action Defendant will take if any given criterium is met.

129. The Final SEIS does not identify meaningful compensatory mitigation measures for municipal water suppliers.

130. Accordingly, the Final SEIS fails to actually address or substantively respond to comments provided by the City of Stayton.

131. Furthermore, the Final SEIS fails to consider a reasonable range of alternatives to its proposed action.

132. The Final SEIS does not address how the Corps will avoid violating Oregon's water quality standards.

## XI. <u>CLAIMS FOR RELIEF</u>

### <u>FIRST CLAIM FOR RELIEF</u>

**Violation of the APA for Failure to Comply with the WRDA (Pub. L. 118-272)**
**(5 U.S.C. § 706(2)(A))**

133. The City of Stayton hereby incorporates paragraphs 1-132 as if set forth fully herein.

134. A reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

135. A court may postpone the effective date of an action should justice so require. 5 U.S.C. § 705.

136. The WRDA required Defendant to submit, by January 4, 2026, a turbidity report with specific components discussing the turbidity impacts of deep drawdowns in the Willamette Valley.

137. In enacting the WRDA, Congress explicitly directed Defendant to identify instances of high turbidity following drawdowns, report on turbidity monitoring during those drawdowns, summarize monitoring records for drawdowns that led to public concern, identify lessons learned from past drawdowns, and opportunities to minimize monetary strains caused by the turbidity increases on non-federal entities.

138. Defendant flouted this statutory mandate and failed to produce such a report. Instead, they published the Final SEIS without analyzing turbidity impacts beyond recognizing that the drawdowns will mobilize sediment.

139. The Final SEIS does not summarize turbidity monitoring records from past drawdowns related to past public concerns, and does not compare turbidity prior to, during, and following a drawdown, as specifically required by Congress.

140. The Final SEIS does not draw on lessons learned from past drawdowns, as specifically required by Congress.

141. The Final SEIS does not explore opportunities to minimize monetary strains on non-Federal entities, as specifically required by Congress.

142. Defendant' failure to complete the report leaves a massive analytical gap in the Final SEIS, whereby the City of Stayton faces irreparable harm without those harms having been adequately considered by the agency.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

143. Accordingly, Defendant' planned deep drawdown at Detroit in the complete absence of the required turbidity report is arbitrary, capricious, and not in accordance with the law, and must be set aside under the APA. *See* 5 U.S.C. § 706(2)(A).

144. The City of Stayton and its residents will be irreparably harmed by Defendant' failure to adequately analyze turbidity impacts, as required by the WRDA, before implementing a deep drawdown of the Detroit Reservoir because the drawdown will destroy its SSF infrastructure and will debilitate its municipal water supply and force the City to shut off service to its residents, fire district, healthcare facilities, schools, business, and other critical public services.

145. The Court should postpone planned deep drawdowns at Detroit Reservoir until Defendant has completed the turbidity report as required by Congress.

**<u>SECOND CLAIM FOR RELIEF</u>**

**Violation of the APA for Failure to Comply with NEPA, 42 U.S.C. §§ 4321-4370h**
**(5 U.S.C. § 706(2)(A))**

146. The City of Stayton hereby incorporates paragraphs 1-132 as if set forth fully herein.

147. A reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

148. A court may postpone the effective date of an agency action should justice so require. 5 U.S.C. § 705.

149. The Final SEIS fails to take a "hard look" at the environmental consequences of the deep drawdowns, as required by NEPA because it fails to consider all important aspects of the problem.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

150. The Final SEIS recognizes that turbidity is a likely consequence of the deep drawdowns, but stops there. It ignores an important aspect of the problem because it does not identify, at an operational level, the impact of sudden spikes in turbidity on municipal water supplies, nor does it discuss risks associated with the complete cessation of potable water delivery in region.

151. The Final SEIS ignores an important aspect of the problem because it does not articulate how stakeholders like the City of Stayton could invoke an Emergency Response and Communication Plan to halt a deep drawdown that threatened its municipal water facilities.

152. The Final SEIS ignores an important aspect of the problem because it does not include the congressionally-required turbidity study. Completion of that study would have shed light on the downstream consequences of sudden spikes in turbidity, consequences that the Final SEIS ignores, as well as potentially allowed for better risk prevention in advance.

153. The Final SEIS ignores an important aspect of the problem because it does not include discussion of how the deep drawdowns will impact ESA-listed salmonids and gray wolves.

154. The Final SEIS fails to take a "hard look" at the environmental consequences of the deep drawdowns, as required by NEPA because it fails to fully assess the cumulative and recurring impacts of the project.

155. The Final SEIS fails to take a "hard look" at the environmental consequences of the deep drawdowns, as required by NEPA because it fails to consider reasonable range of alternatives.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

156. Accordingly, Defendant's planned deep drawdown at Detroit in the complete absence of the required turbidity report is arbitrary, capricious, and not in accordance with the law, and must be set aside under the APA. *See* 5 U.S.C. § 706(2)(A).

157. These deficiencies in the Final SEIS will have direct and dire consequences for the City of Stayton and its residents.

158. The City of Stayton will be irreparably harmed by Defendant' failure to comply with NEPA's requirements before implementing a deep drawdown of the Detroit Reservoir because the drawdown will destroy its SSF infrastructure and will debilitate its municipal water supply and force the City to shut off service to its residents, fire district, healthcare facilities, schools, business, and other critical public services.

159. The Court should postpone the planned deep drawdowns at Detroit Reservoir until Defendant has adequately considered a reasonable range of alternatives; has adequately considered mitigation options including the availability and definition of a process under a Emergency Response and Communications Plan to halt a drawdown; has completed the turbidity report as required by Congress; and until Defendant has considered impacts to ESA-listed salmonids and gray wolves.

## <u>THIRD CLAIM FOR RELIEF</u>

### Violation of the APA for Failure to Comply with the CWA, 33 U.S.C. § 1251 *et seq.*
### (5 U.S.C. § 706(2)(A))

160. The City of Stayton hereby incorporates paragraphs 1-132 as if set forth fully herein.

161. A reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

162. A court may postpone the effective date of an agency action should justice so require. 5 U.S.C. § 705.

163. Federal agencies like Defendant must comply with State-imposed water quality standards, including its numerical and narrative criteria and any antidegradation policy. 33 U.S.C. § 1323.

164. Past drawdowns have resulted in violations of Oregon's water quality standards.

165. The planned deep drawdown of Detroit Reservoir will increase the turbidity in the North Santiam River to a degree that will violate Oregon's water quality standards.

166. These violations of the water quality standards will impact the existing beneficial use of the North Santiam River for drinking water. These violations will make the water unsafe for use by the City of Stayton and its residents.

167. Accordingly, Defendant' planned deep drawdown at Detroit in the complete absence of the required turbidity report is arbitrary, capricious, and not in accordance with the law, and must be set aside under the APA. *See* 5 U.S.C. § 706(2)(A).

168. The City of Stayton will be irreparably harmed by Defendant' failure to comply with Oregon's water quality standards because the turbidity will destroy its SSF infrastructure and will debilitate its municipal water supply and force the City to shut off service to its residents, fire district, healthcare facilities, schools, business, and other critical public services.

169. The Court should postpone the planned deep drawdowns at Detroit Reservoir until Defendant has completed the turbidity report as required by Congress.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

**FOURTH CLAIM FOR RELIEF**

**Violation of the APA for Action Unlawfully Withheld or Unreasonably Delayed**

**(5 U.S.C. § 706(1))**

170. The City of Stayton hereby incorporates paragraphs 1-132 as if set forth fully herein.

171. A reviewing court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

172. Defendant was required to complete the turbidity report mandated by the WRDA January 4, 1016. They did not.

173. Defendant has therefore unlawfully failed to take action in the time allowed by law under 5 U.S.C. § 706(1).

174. The City of Stayton will be irreparably harmed by Defendant's failure to comply with the WRDA because the turbidity will destroy its SSF infrastructure and will debilitate its municipal water treatment and force the City to shut off service to its residents, fire district, healthcare facilities, schools, business, and other critical public services.

175. Thus, the Court should compel Defendant to comply with the WRDA and complete the turbidity report.

176. The Court should postpone the planned deep drawdowns at Detroit Reservoir until Defendant has completed the turbidity report as required by Congress

**FIFTH CLAIM FOR RELIEF**

**Violation of the APA for Action Unlawfully Withheld or Unreasonably Delayed**

**(5 U.S.C. § 706(1))**

177. The City of Stayton hereby incorporates paragraphs 1-132 as if set forth fully herein.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

178. A reviewing court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

179. Failure to publish a Final SEIS that permits municipal water purveyors to invoke an Emergency Response and Communications Plan in the event that turbidity threatens municipal water supplies constitutes a violation of the APA and NEPA.

180. Defendant has therefore unlawfully failed to take action in the time allowed by law under 5 U.S.C. § 706(1).

181. The City of Stayton will be irreparably harmed by Defendant' failure to provide for an Emergency Response and Communications Plan that allows municipal water suppliers to avoid shutdowns because the turbidity will destroy its SSF infrastructure and will debilitate its municipal water supply and force the City to shut off service to its residents, fire district, healthcare facilities, schools, business, and other critical public services.

182. Thus, the Court should compel Defendant to comply with the APA and NEPA and complete an Emergency Response and Communications Plan that allows the City of Stayton to inform the Corps of real-time risk to its water treatment system and requires the Corps to cease the drawdown in that event.

183. The Court should postpone the planned deep drawdowns at Detroit Reservoir until Defendant has completed the turbidity report as required by Congress.

## SIXTH CLAIM FOR RELIEF

**Violation of the APA for Failure to Comply with the Endangered Species Act, 16 U.S.C. § 1531 *et seq.***

**(5 U.S.C. § 706(2)(A))**

184. The City of Stayton hereby incorporates paragraphs 1-132 as if set forth fully herein.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

185. A reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

186. A reviewing court may postpone the effective date of an agency action should justice so require. 5 U.S.C. § 705.

187. The Final SEIS arbitrarily and capriciously concludes that there are no gray wolves in the Detroit area, despite that area being listed as part of their range.

188. The Final SEIS fails to consider the impacts of deep drawdowns on ESA-listed species, in particular by failing to consider how increased turbidity constitutes a "take" of the listed salmonids, and how mechanical injury from the drawdowns will harm the listed salmonids, and will harm listed gray wolves by depriving them of a critical food source.

189. The Final SEIS therefore violates the APA because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

190. Thus, the Court should compel Defendant to comply with the APA and the ESA by considering the impact of the deep drawdowns on ESA-listed species.

191. The Court should postpone the planned deep drawdowns at Detroit Reservoir until Defendant has adequately considered the impact of the deep drawdowns on ESA-listed species.

**PRAYER FOR RELIEF**

WHEREFORE, the City of Stayton prays for relief as follows:

1. On the City of Stayton's First Claim for Relief, a judgment:

   a. Declaring, pursuant to 5 U.S.C. § 706(2)(A), that Defendant is in violation of its obligation to complete the turbidity report by January 4, 2026, as required by the



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

WRDA, and its failure to include this report in the Final SEIS as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

b. Setting aside, pursuant to 5 U.S.C. § 706(2)(A), all portions of the Final SEIS that authorize or rely upon the proposed deep drawdown of Detroit Reservoir;

c. Postponing, pursuant to 5 U.S.C. § 705, implementation of the Final SEIS with respect to Detroit Dam unless and until Defendant comply with the NEPA by taking a hard look at the consequences of the proposed action, including by considering all aspects of the problem, completing a full assessment of the cumulative impacts, and consider a full reasonable range of alternatives;

2. On the City of Stayton's Second Claim for Relief, a judgment:

   a. Declaring, pursuant to 5 U.S.C. § 706(2)(A), that Defendant is in violation of its NEPA obligations to take a hard look at the environmental consequences of their actions and that this violation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

   b. Setting aside, pursuant to 5 U.S.C. § 706(2)(A), all portions of the Final SEIS that authorize or rely upon the proposed deep drawdown of Detroit Reservoir;

   c. Postponing, pursuant to 5 U.S.C. § 705, implementation of the Final SEIS with respect to Detroit Dam unless and until Defendant comply with NEPA by adequately considering a reasonable range of alternatives, adequately considering mitigation options including the availability of a process under the Emergency Response and Communications Plan to halt a drawdown, completing the turbidity report as required by Congress, and considering impacts to ESA-listed salmonids and gray wolves.

3. On the City of Stayton's Third Claim for Relief, a judgment:



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

a. Declaring, pursuant to 5 U.S.C. § 706(2)(A), that Defendant are in violation of the CWA by failing to consider that the deep drawdowns will violate Oregon water quality standards, and their failure to include this discussion in the Final SEIS was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

b. Setting aside, pursuant to 5 U.S.C. § 706(2)(A), all portions of the Final SEIS that authorize or rely upon the proposed deep drawdown of Detroit Reservoir;

c. Postponing, pursuant to 5 U.S.C. § 705, implementation of the Final SEIS with respect to Detroit Dam unless and until Defendant complies with the CWA by adequately addressing the violations of Oregon water quality standards;

4. On the City of Stayton's Fourth Claim for Relief, a judgment:

a. Declaring, pursuant to 5 U.S.C. § 706(1), that Defendant are in violation of the APA by unlawfully withholding or unreasonably delaying action;

b. Setting aside, pursuant to 5 U.S.C. § 706(2)(A), all portions of the Final SEIS that authorize or rely upon the proposed deep drawdown of Detroit Reservoir;

c. Postponing, pursuant to 5 U.S.C. § 705, implementation of the Final SEIS with respect to Detroit Dam unless and until Defendant completes the turbidity report required by the WRDA;

5. On the City of Stayton's Fifth Claim for Relief, a judgment:

a. Declaring, pursuant to 5 U.S.C. § 706(1), that Defendant are in violation of the APA by unlawfully withholding or unreasonably delaying action;

b. Setting aside, pursuant to 5 U.S.C. § 706(2)(A), all portions of the Final SEIS that authorize or rely upon the proposed deep drawdown of Detroit Reservoir;



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

c. Postponing, pursuant to 5 U.S.C. § 705, implementation of the Final SEIS with respect to Detroit Dam unless and until Defendant permit the City of Stayton to invoke a Emergency Response and Communications Plan in the event that turbidity threatens its water treatment system and a commitment by the Corps to ceasing a drawdown in response;

6. On the City of Stayton's Sixth Claim for Relief, a judgment:

a. Declaring, pursuant to 5 U.S.C. § 706(2)(A), that Defendant is in violation of the ESA by failing to consider the impacts that the deep drawdowns at Detroit will have on ESA-listed species, and that the failure to include this discussion in the Final SEIS was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

b. Setting aside, pursuant to 5 U.S.C. § 706(2)(A), all portions of the Final SEIS that authorize or rely upon the proposed deep drawdown of Detroit Reservoir; and

c. Postponing, pursuant to 5 U.S.C. § 705, implementation of the Final SEIS with respect to Detroit Dam unless and until Defendant considers the impacts of deep drawdowns at Detroit on ESA-listed salmonids and gray wolves.

DATED August 14, 2026.

Respectfully submitted,

PEARL LEGAL GROUP PC

s/ Jennifer L. Gates
Jennifer L. Gates, OSB No. 050578
jgates@pearllegalgroup.com
Heather C. Doherty, OSB No. 244304
htourgee@pearllegalgroup.com



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

529 SW Third Avenue, Suite 600
Portland, OR 97204
Telephone: (503) 445-7101

**Counsel for Intervenor-Plaintiff City of Stayton**